IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DORIS SMALLCANYON,**

      **Plaintiff,**

v.                                                                             **CIV. 03-0283 LAM**

**JOANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing *(Doc. 15)* filed on July 30, 2003. In accordance with 28 U.S.C. § 636(c)(1) and Fed.R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion, Defendant's response to the motion, Plaintiff's reply to the response and the relevant law. Additionally, the Court has carefully reviewed and considered the entire administrative record (hereinafter *"Record"*). For the reasons set forth in this Memorandum Opinion and Order, the Court **FINDS** that Plaintiff's motion should be **DENIED** and the decision of the Commissioner of Social Security (hereinafter "Commissioner") **AFFIRMED**.

      Plaintiff, age 55, alleges a disability which commenced on January 1, 1998 due to continuous asthma attacks and hypothyroidism. *Record at 42, 64*. The Commissioner denied Plaintiff's request for Supplemental Security Income ("SSI") benefits both initially and on reconsideration. *Record at 48, 55*. After conducting an administrative hearing, the Commissioner's Administrative Law Judge

("ALJ") also denied the application, concluding that the Plaintiff had the residual functional capacity for a significant range of light work and was therefore not disabled.[1]  The Appeals Council denied review of the ALJ's decision *(Record at 9)*, thus the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. § 405(g).

At the time of the Commissioner's final decision, claimant was 53 years old, with a high school education.  Her past relevant work was as a self-employed silversmith. *Record at 64, 65, 73*. The ALJ determined that the Plaintiff's impairments due to asthma and diabetes mellitus were severe and that the impairments due to depression, a history of ovarian cysts, and hypothyroidism were not severe, considered separately or in combination. *Record at 19.*  These impairments rendered Plaintiff unable to return to her past work as a silversmith, but she remained capable of performing a significant range of light work.  Based on application of the Medical-Vocational Guidelines, the ALJ found that the Plaintiff was not disabled. *Record at 26-27.*

Plaintiff raises the following allegations of error with respect to the ALJ's decision:  (1) the ALJ's boilerplate credibility finding was insufficient; (2) the ALJ erred in determining that Plaintiff's impairments did not meet or equal Listing 3.03B; and (3) the ALJ erred at Steps Four and Five of the Sequential Evaluation Process.

## I.  Standard of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief.  *E.g., Hamilton v.*

---

[1] The ALJ determined the Plaintiff had the following residual functional capacity:  light exertional level work, which requires no more than occasional climbing, balancing, kneeling, crouching, crawling, or stooping, and which allows her to avoid exposure to temperature extremes, dust, humidity/wetness, and fumes, odors, chemicals, and gases. *Record at 21.*

*Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-1500 (10th Cir. 1992).  This assessment is based on a review of the entire record, where the court can neither reweigh the evidence nor substitute its judgment for that of the agency.  *E.g., Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted).  "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence."  *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42  U.S.C. § 423(d)(1)(A)).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  *Id.; see* 20 C.F.R. §§ 404.1520(a-f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  *Id.* (citations omitted).

At the first four levels of the evaluation, the claimant must show:  (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meet or equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; or (4) that he or she is unable to perform work done in the past.  At Step Five, the burden shifts to the Commissioner to show that the claimant has a Residual Functional Capacity (hereinafter "RFC") to do work in the national economy other than past relevant work.  *Thompson* at 1487 (citations omitted).  In this case, the ALJ found Plaintiff not

disabled at Step Five. The Medical-Vocational Guidelines (hereinafter "grids") are used at Step Five to determine whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. The grids reflect the existence of jobs in the national economy at various RFC levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§ 404.1566(d); 416.966(d). This aids the Commissioner in determining what specific job types in the national economy the claimant can perform. The grids assume that the claimant's sole limitation is lack of strength, *i.e.*, an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(3)(2).

## II. Analysis

### A. *Credibility Finding is Supported by Substantial Evidence*

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.* 898 F.2d 774, 777, *cited in Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Huston v. Bowen*, 838 F.2d 1125, 1131, 1133 (footnote omitted) (10th Cir. 1988), *cited in Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ must "articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotations omitted).

Plaintiff alleges the ALJ failed to make specific findings or explain reasons for her credibility determination. *Plaintiff's Memo in Support of Motion (Doc #16) at 5- 6*. At the August 6, 2001 hearing before the ALJ, the Plaintiff testified that she no longer works and spends her days doing nothing. Sometimes she reads her Bible while her husband does the housework and laundry. *Record*

*at 35-36.* However, the ALJ noted inconsistencies between Plaintiff's testimony and medical records wherein Plaintiff indicated to medical personnel that she was continuing to work as a silversmith through July 2000,[2] although her physician repeatedly warned soldering (a component of silversmithing) would exacerbate Plaintiff's asthma. *Record at 23*, *178*. The ALJ cites to Plaintiff's treating physician's assessment that Plaintiff "could perform light work activities as long as she avoided exposure to allergens such as dust, fumes, gases, etc." *Record at 23, 179-182.* The assessment of Dr. Melani McCullough, Plaintiff's primary treating physician, is consistent with the Plaintiff's medical records which indicate that Plaintiff's complaints of breathing difficulties were increased when she tried to solder, but indicated no difficulty breathing when she was not soldering and taking her prescribed medications. The ALJ then cited to five specific instances where Plaintiff reported her breathing problems or lack thereof. The ALJ wrote:

> For example, on June 2, 1999, the claimant noted that her "breathing is really good" and Dr. McCullough noted that she had not experienced an asthma exacerbation since starting Accolate in November 1998. (Ex. 20/8) *[Record at 146]* On March 6, 2000, the claimant told Dr. McCullough that she was "doing well" but couldn't solder because her asthma flared. (Ex. 20/2) *[Record at 140]* On July 7, 2000, the claimant reported that she was soldering again and was having more secretions and decreased air movement. (Ex. 33/36) *[Record at 228]* On November 6, 2000, she was "keeping asthma in control, avoiding allergens." (Ex. 33/33) *[Record at 225]* The claimant told Dr. McCullough on July 19, 2001 that she was "feeling fine" and "breathing ok." (Ex. 33/13) [Record at 205]

*Record at 23. (Citations to Record added)*

   The ALJ then examined Plaintiff's medical records concerning the new onset of diabetes

---

[2] On a PCC Ambulatory Encounter Record dated 7/7/2000 Plaintiff stated to Dr. McCullough that she was soldering again and had more secretions and decreased air movement. *Record at 228.* On an undated Social Security form (updating information after September 13, 2000), Plaintiff also provides conflicting information concerning her work history. Plaintiff states she "was self-employed until March 2001 since I got sick over/over – I just stopped." On the same form, Plaintiff also states she "did silversmithing up to March, 2000." *Record at 177*. All of these dates indicate work past the alleged disability onset date of January 1, 1998.

mellitus diagnosed on April 23, 2001. The medical records indicate Plaintiff complained of blurred vision and weight loss and following a diagnosis of diabetes the condition was brought under control with diet and oral medication. *Record at 23*, *199*. The ALJ also noted that the "medical records contain no evidence that the claimant experiences any side effects from her anti-diabetic medications." *Record at 23*.

The ALJ then reviewed the medical records and determined that Plaintiff's hypothyroidism and depression were not disabling, according to her own physician's opinion. *Record at 23, 24, 178*. The ALJ determined, after consideration of the medical evidence and opinions of Plaintiff's treating physician "which reflect judgments about the nature and severity of the impairments and resulting limitations," that the Plaintiff's testimony "as to the extent, intensity and duration of subjective symptoms and resulting limitations [was] credible only to the extent that she is limited to light exertional level work . . . ." *Record at 24*. The Court finds that the ALJ's credibility finding is supported by substantial evidence in the record. Moreover, as illustrated above, she closely and affirmatively linked her credibility findings to that evidence. Consequently, the Court defers to the ALJ's credibility determination and finds Plaintiff's assertion of error without merit. E.g., *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir 1995).

### B. ALJ's Determination That Plaintiff's Impairments Do Not Meet or Equal Listing 3.03B is Supported by Substantial Evidence

The Plaintiff alleges that the ALJ erred in determining that Plaintiff's asthma does not meet or equal the Listing requirements. *Plaintiff's Memo in Support of Motion (Doc #16) 6, 7.* Listing 3.03B for asthma requires clamant to show attacks[3] (as defined in 3.00C), "in spite of prescribed

---

[3] Attacks are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator

treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks." *See* 20 C.F.R. Pt. 404, subpt. P, app. 1 § 3.03B.

In evaluating the Plaintiff's asthma history, the ALJ reviewed a letter from Plaintiff's treating physician, Dr. Melani McCullough dated August 5, 2001. *Record at 19, 178*. Dr. McCullough indicated that Plaintiff had been prescribed Prednisone and antibiotics 14 times for asthma. Dr. McCullough stated Prednisone is used only to treat severe flares of asthma. However, a review of the medical records provided by the Plaintiff indicates Plaintiff was last treated with Prednisone on February 1, 1999. *Record at 19, 123*. The majority of the episodes requiring Prednisone treatment apparently occurred before the onset date of disability (January 1, 1998) and prior to administration of effective asthma medications. *Record at 19-20*. The ALJ also notes that Plaintiff has seen Dr. McCullough on a regular basis for follow-up evaluations of her asthma and that Plaintiff is treated with multiple asthma medications. *Record at 19*.

Plaintiff alleges five asthma attacks in spite of following the doctor prescribed regimen. *Plaintiff's Memo in Support of Motion (Doc #16) at 7, 9*. Plaintiff indicates these attacks are documented in the record at pages 80, 98, 123, 144, 146, and 240. *Id*. However a careful review of the record indicates this is in error. The Record at 80 is a New Mexico Disability Determination Services form completed and signed by the Plaintiff on 3/2/00, wherein Plaintiff states her last asthma attack was in "Jan. 00". *Record at 80*. But there is no medical documentation to support this assertion. The Record at 98 is an Indian Health Services (hereinafter "IHS") Emergency Visit Record

---

therapy in a hospital, emergency room or equivalent setting. 20 C.F.R. Pt. 404, Subpt. P, App. 1,§ 3.00C.

7

dated 12/17/99, indicating Plaintiff's "chest had a "slight coarse wheeze on expiration." *Record at 98*. The Record at 98 also indicates that Plaintiff was offered a nebulizer treatment[4], but declined. *Id*. The Record at 123 is an IHS Emergency Visit Record dated 2/1/99, indicating the Plaintiff reported an asthma attack and had been using an inhaler for two weeks. The record indicates an "asthma exacerbation" and that Plaintiff was prescribed Prednisone, Albuterol and Azmacort and discharged. *Record at 123*. The Record at 144 is a PCC Ambulatory Record dated 12/6/99 indicating Plaintiff reported a slight cold and sinus drainage, but "breathing feels ok so far." *Record at 144*. Dr. McCullough notes "Asthma – mild exacerbation" in the Purpose of Visit section of the form. *Id*. The Record at 146 is another PCC Ambulatory Record dated 6/2/99 and indicates Plaintiff reports "[b]reathing is really good since surgery." *Record at 146*. Dr. McCullough notes "Asthma baseline (no asthma exacerbation since 11/98 on Accolate)" in the Purpose of Visit section of the form. *Id*. The Record at 240 is a duplicate of the Record at 98 and cannot be counted as a separate incident. *Record at 98, 240*. Plaintiff admits never having been admitted to the hospital for any of her asthma attacks. *Plaintiff's Memo in Support of Motion (Doc #16) at 10.* At most, Plaintiff could claim two mild exacerbations and no "attacks" of the severity required by the relevant regulations as documented in her medical records since the onset disability date. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.03B; 20 C.F.R. Pt. 404, Subpt. P, App. 1,§ 3.00C. Plaintiff fails to support her allegations with appropriate medical documentation.

Alternatively, Plaintiff admits her asthma does not meet every requirement for a Listing, but claims her impairment equals the Listing due to other findings of equal or greater clinical significance,

---

[4]A nebulizer is a device used to reduce liquid medication to extremely fine cloudlike particles; useful in delivering medication to deeper parts of the respiratory tract. *Stedman's Medical Dictionary,* 1184 (27th ed. 2000).

*i.e.*, her diabetes. *Plaintiff's Memo in Support of Motion (Doc #16) at 11*. However, the ALJ also reviewed the Plaintiff's other conditions, including diabetes mellitus, depression, hypothyroidism and an ovarian cyst. *Record at 20*. The ALJ found, after review of Plaintiff's medical records, that Plaintiff's diabetes was under control with treatment, Plaintiff had discontinued her anti-depressant at her own request, Plaintiff's hypothyroidism was well controlled with medication, and that following successful surgery for the ovarian cyst, Plaintiff required no further treatment. *Record at 20*. The ALJ stated:

> Upon review, I find that the severity of the claimant's impairments, considered separately or in combination, does not meet or medially equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Specifically, the severity of her diabetes mellitus does not meet or equal the requirements of Listing 9.08, as the record contains no evidence of neuropathy, acidosis, amputation, or retinitis proliferans. In addition, the requirements of Listing 3.00ff are not met or equaled.

*Record at 20*.

At step three, Plaintiff has the burden of demonstrating, through medical evidence, that her impairments meet all the specified medical criteria contained in a particular listing. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). A claimant who seeks to show that her impairment is "equivalent" to a listed impairment must present medical findings equal to all the criteria for that impairment. *Id*. The regulations provide that the claimant's own descriptions of his impairments are not sufficient to establish her disability under the Listings. 20 C.F.R. § 404.1528(a); 416.928. Based on the evidence provided by Plaintiff, and medical opinions from acceptable medical sources, the ALJ properly concluded that Plaintiff's impairments, considered separately or in combination, do not meet or equal any of the impairments in Listing 3.03B.

### *C. No Error at Step Four and Step Five Determination*

At Step Four, the ALJ must assess a claimant's residual functional capacity, examine the demands of claimant's past relevant work, and determine whether the claimant can perform the past relevant work given the residual functional capacity. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). In this case, the ALJ first found, among other things and based on her credibility determination, that the Plaintiff is "limited to light exertional level work, which requires no more than occasional climbing, balancing, kneeling, crouching, crawling, or stooping, and which allows her to avoid exposure to temperature extremes, dust, humidity/wetness, and fumes, odors, chemicals, and gases." *Record at 24.*

As required by 20 C.F.R. 416.927 and Social Security Rulings 96-2p and 96-6p, the ALJ considered all medical opinions reflecting judgments about the nature and severity of Plaintiff's impairments and limitations. *Record at 24.* The ALJ considered the Physical Residual Functional Capacity Assessment completed on June 8, 2000 and affirmed on August 9, 2000 by two nonexamining state agency physicians. This assessment indicated Plaintiff "had no exertional limitations, but should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." *Record at 24, 154-160.*

Next the ALJ considered three letters and the September 20, 2001 Medical Source Statement of Ability to Do Work-Related Activities (Physical) completed by Plaintiff's treating physician, Dr. Melani McCullough. *Record at 24, 162, 163, 164, 179-182.* In a letter dated February 1, 2000, Dr. McCullough stated that the Plaintiff "has developed a severe asthma which is exacerbated by stone dust so she is no longer able to produce stone carvings." *Record at 24, 164.* Dr. McCullough

stated in a July 11, 2000 letter that the Plaintiff's asthma had worsened since January 1995, to the point she was on maximal therapy. *Record at 163*. Plaintiff had tried to eliminate allergens in her home, but remained ill until she stopped soldering. Dr. McCullough noted that each time Plaintiff soldered, her asthma worsened dramatically and each asthma flare caused further damage to her lungs. *Record at 24, 163*. Dr. McCullough concluded Plaintiff was "therefore unable to work at her profession." *Record at 24, 163*. On September 13, 2000, Dr. McCullough repeated her conclusion that the Plaintiff could never solder safely again. *Record at 24, 162*.

In the September 20, 2001 Medical Source Statement of Ability to Do Work-Related Activities (Physical) Dr. McCullough indicated that the Plaintiff had the ability to lift or carry 20 pounds occasionally and 10 pounds frequently, had no limitations of her abilities to sit, stand, or walk, could perform postural activities occasionally, and should avoid temperature extremes, dust, humidity/wetness, and fumes, odors, chemicals, and gases. *Record at 24, 179-182*. Dr. McCullough noted that Plaintiff's balance could be affected by blood sugars. *Record at 24, 180*. Also, the Plaintiff had severe asthma as measured by peak flow and reacted to dust, soldering fumes, wetness, and cold as evidenced by decreases in peak flow with these exposures. *Record at 24, 182*. In accordance with Social Security Ruling 96-2p, the ALJ gave controlling weight to Dr. McCullough's opinion as Plaintiff's treating physician in determining Plaintiff's residual functional capacity.[5] *Record at 24*.

The ALJ next assessed Plaintiff's ability to perform any of her past relevant work based upon the determined residual functional capacity. In this case, the ALJ found that the Plaintiff does not

---

[5]Social Security Ruling 96-2p is a policy interpretation ruling giving controlling weight to treating source medical opinions. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e*, it must be adopted. SSR 96-2p, 6.

11

have the capacity to return to her past relevant work as a silversmith, because of the exposure to dust, gases and soldering fumes, both as she performed it and as generally performed in the national economy. *Record at 25.*

The Plaintiff alleges the ALJ failed to adequately develop the record concerning her past relevant work. *Plaintiff's Memo in Support of Motion (Doc #16) at 13-15.* Although the Court agrees that the ALJ asked the Plaintiff only a couple of questions concerning her past work during the hearing, the entire record does contain sufficient information and an adequate description of the Plaintiff's past relevant work as a silversmith. On February 15, 2000, Plaintiff reported on her SSA Disability and Work History Report that she was a self-employed silversmith and used machines, tools, and equipment to make jewelry. *Record at 65, 74.* She also stated she "used craft tools, buffer, etc." and had learned her skill through hands on training. *Record at 74.* Plaintiff indicated that during work she walked for one hour, stood for one hour, and sat for six hours; she never lifted anything over ten pounds and used only small tools. *Record at 74.*

In addition to the hearing and Plaintiff's reports, the ALJ consulted a vocational expert (hereinafter "VE"), and submitted interrogatories regarding the Plaintiff's past relevant work and ability to perform other work with her RFC. *Record at 183-191.* The VE reported the occupation of silversmith was sedentary and skilled, and provided the ALJ with a list of transferrable skills Plaintiff acquired through her past work as a silversmith. *Record at 189.* These skills included the ability to "[f]abricate and assemble jewelry, use tools, cut, saw, file, polish and solder [jewelry]." *Record at 189.* The Plaintiff may also have learned to "design, mold, repair, reshape, and restyle jewelry." *Id.* Also, as a self-employed silversmith, Plaintiff would have sold her jewelry and acquired selling and money handling skills. *Id.*

Plaintiff argues that there was not substantial evidence to support the VE's determination that Plaintiff has transferable skills. *Plaintiff's Memo in Support of Motion (Doc #16) at 15*. However, in *Goatcher v. United States Dept. of Health and Human Services*, the Tenth Circuit found that a VE's testimony was based on evidence of record because even though the appellant did not testify at the ALJ hearing about her skills, she did disclose them in her vocational report. And thus the VE's testimony constituted substantial evidence to support the ALJ's decision on the appellant's transferable skills. *Goatcher v. United States Dept. of Health and Human Services*, 52 F.3d 288, 289 (10th Cir. 1995). In this case, while Plaintiff's testimony at the ALJ hearing was minimal, Plaintiff did submit a SSA Disability and Work History Report indicating her skills. *Record at 65, 74*. The Court finds that the record as a whole was sufficiently developed regarding Plaintiff's past relevant work and transferable skills and the ALJ's decision was based on substantial evidence.

The Plaintiff argues that she is unable to perform some of the jobs listed by the VE due to her vision problems. *Plaintiff's Memo in Support of Motion (Doc #16) at 16-17*. Dr. McCullough did indicate Plaintiff was having some "difficulty with not being able to see clearly secondary to high blood sugar" in a letter dated August 5, 2001. *Record at 178*. However, on September 20, 2001, Dr. McCullough did not indicate visual limitations when assessing the Plaintiff's ability to do work-related activities. *Record at 181*. The ALJ carefully reviewed all of the Plaintiff's impairments and in her discussion of the Plaintiff's diabetes mellitus noted that Plaintiff complained of blurred vision. *Record at 20*. Therefore, the Court cannot characterize the ALJ's failure to specifically comment on the Plaintiff's vision problems as her having ignored the medical evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence.").

Finally, Plaintiff argues she is disabled because the only occupation (jewelry preparer) available to her, due to vision limitations, is sedentary and unskilled and that under Medical-Vocational Guideline (grid) Rule 201.12, she would be found disabled. *Plaintiff's Memo in Support of Motion (Doc #16) at 18.* This argument fails because the ALJ properly found Plaintiff had the RFC to perform a significant range of light work and considering Plaintiff's age, education and work experience, she is not disabled under the appropriate Medical-Vocational Guideline Rules 202.14 and 202.15. *See* 20 C.F.R. pt. 404, subpt. P app.2 §§ 202.14, 202.15. Rule 201.12 is not applicable because the ALJ found the Plaintiff retained the RFC for a range of light work. According to the list provided by the VE, there are a significant number of jobs in the national economy available to Plaintiff within the range of light work. *Record at 190.*

### III.  Conclusion

The Commissioner's finding that Plaintiff is not disabled under the Social Security Act is consistent with regulatory criteria and in accordance with relevant case law. The ALJ's decision is supported by substantial evidence and is a correct application of the regulations and, therefore, entitled to judicial deference.

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand For A Rehearing (*Doc. 15*) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

*/s/ Lourdes A. Martínez*
LOURDES A. MARTÍNEZ
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent

14